Sara J. Lipowitz, SB #209163
LAW OFFICE OF SARA J. LIPOWITZ
303 Potrero Street, No. 45-102
Santa Cruz, CA 95060
Telephone Number: (831) 427-0546
Facsimile Number: (831) 427-0530
Email Address: saral@lipowitzsolutions.com

Attorney for Debtors,
Noemi Valdez Pinedo and
Margarito Alonso Pinedo

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>NOEMI VALDEZ PINEDO and<br>MARGARITO ALONSO PINEDO,<br><br>    Debtors. | Case No. 09-54650-ASW<br><br>Chapter 11<br><br><br>**Date: June 21, 2010**<br>**Time: 2 p.m.**<br>**Courtroom: 3020**<br>**Honorable Arthur S. Weissbrodt** |

<u>**NOEMI VALDEZ PINEDO AND MARGARITO ALONSO PINEDO'S FOURTH AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**</u>

                          I.      **INTRODUCTION**

This is the fourth amended disclosure statement (the "Disclosure Statement") in the individual chapter 11 case of Noemi Valdez Pinedo and Margarito Alonso Pinedo (the "Debtors"). This Disclosure Statement contains information about the Debtors and describes the Fourth Amended Plan filed by the Debtors on May 27, 2010. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

      The proposed distributions under the Plan are discussed at pages 5-8 of this Disclosure Statement. Unsecured creditors are classified in Classes 4, 5 and 6, and will receive a distribution of 4% of their allowed claims, to be distributed quarterly for five (5) years.

**A.     Purpose of This Document**

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the proponents believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.     Deadline for Objecting; Date of Disclosure Statement Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1.     Time and Place of the Hearing to Approve This Disclosure Statement*

The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on June 21, 2010 , at 2 p.m., in Courtroom 3020, at the United States Federal Courthouse, 280 S. First St., San Jose, CA 95113.

*2.     Deadline for Objecting to the Adequacy of Disclosure*

Objections to this Disclosure Statement must be filed with the Court and served upon all interested parties by June 14, 2010.

*4.     Identity of Person to Contact for More Information*

If you want additional information about the Plan or Disclosure Statement, contact Sara J. Lipowitz, Law Office of Sara J. Lipowitz, 303 Potrero St., #45-102, Santa Cruz, CA 95060, p: 831-427-0546, f: 831-427-0530.

## II.     BACKGROUND

**A.     Description and History of the Debtors' Business**

The Debtors are individuals. The Debtors are in the business of leasing residential properties. They also operate a small handyman services business and a retail clothing business.

*1.     Western Sun*

Debtor Margarito Alonso Pinedo is employed with Western Sun Systems, a Carmel-based company that installs residential solar systems. Despite the economic downturn, Western Sun's business is picking up – Mr. Pinedo was employed only nine months last year, but expects to be employed all 12 months this year and into the foreseeable future.

*2.     Handyman Business*

Mr. Pinedo also has operated his own handyman business since 2003. He gets jobs through referrals, through advertising, and through his employment. Depending on how many jobs Mr. Pinedo gets, he may net anywhere from $500 to $1,500 in additional income per month. Mr. Pinedo does not have any employees.

*3.     Bella Fashions*

Debtor Noemi Valdez Pinedo is the sole proprietor of Bella Fashions, a retail clothing company. Mrs. Pinedo took over operation of this business from her brother, who previously ran it for eight years. To keep overhead low, Mrs. Pinedo purchases inventory wholesale from vendors in Los Angeles and sells it at local flea markets. The business has been netting about $1,000 a month since Mrs. Pinedo took over operations in November 2008; she expects that to increase in the coming months, as she expands the number of locations where she operates. Mrs. Pinedo has been appearing regularly at the Red Barn flea market, but will also commence at new locations in Seaside, San Jose, and San Juan Bautista. Besides Mrs. Pinedo, this business does not have any employees.

*4.     Rental Business*

Mr. and Mrs. Pinedo purchased their first home, 1631 Soto St., Seaside, CA in 2003 for their family. They purchased 406 California St., Salinas, CA in 2004, moved into one of its two units, and kept the Soto Street property as a rental. In 2005 they purchased 418 California Street, Salinas, CA, and relocated to one of its three units, renting out the other two and keeping all other properties as rentals. As a skilled handyman, Mr. Pinedo is able to maintain the units himself, keeping overhead costs low. Currently the properties are fully rented.

**B.     Events Leading to Chapter 11 Filing**

The Debtors fell behind on payments on their rental properties due to renter vacancies and also a decrease in personal income. Debtor Noemi Valdez Pinedo was formerly employed as a mortgage broker. When the residential real estate market collapsed, the Pinedos were overexposed on their properties.

**C.     Significant Events During the Bankruptcy Case**

- Creditor America's Wholesale Lender filed a Motion for Relief from Stay on August 26, 2009 in connection with the Debtors' property located at 1631 Soto St., Seaside, CA 93955. The Debtors did not oppose this motion and on September 22, 2009, the Court granted the requested relief. America's Wholesale Lender has not yet sold the property at auction.

- The Court established a claims bar date of 10/20/09.
- An Application to Employ the Office of Sara J. Lipowitz as Debtors' counsel was filed on August 23, 2009. This application was granted on November 3, 2009.
- Creditor Wachovia Financial Services filed a Proof of Claim on October 15, 2009. Debtors filed an Objection to Creditor's Claim on October 20, 2009. Debtors filed a Request for Entry of Default on Creditor's Claim on February 1, 2010. This request was granted on February 16, 2010.
- Creditor Monterey County Treasurer-Tax Collector withdrew its claim on December 7, 2009.
- The Debtors filed a Motion to Avoid Lien on February 17, 2010. The purpose of this Motion is to declare the second mortgage on the 418 California Street property unsecured and thus void. Receiving no response from Creditor America's Wholesale Lender, the Debtors filed an Order for Entry of Default on April 8, 2010. The Order was granted on May 7, 2010.
- The Debtors have increased their retail clothing sales since starting business operations in November 2008. The Debtors' California Street properties are fully rented.

### D. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### E. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### F. Current and Historical Financial Conditions

The rental properties Debtors intend to retain are 418 California St., Salinas, CA and 406 California St., Salinas, CA. Appraisals conducted in May 2009 by Greg Scattini Appraisals, P.O. Box 941, San Juan Bautista, CA 95045, value these assets at $365,000 and $250,000, respectively. True and correct copies of these appraisals are attached as Exhibit B. The values of all Debtors' other assets are listed on Schedules B and D; true and correct copies of these schedules are attached as Exhibit C.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit E.

### III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is

impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case, which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

///

///

///

///

///

///

///

///

///

///

///

///

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business | None | Paid in the ordinary course of business |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | None | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the Court | $15,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if the Court has not approved such fees on the effective date of the Plan. This figure represents the approximate final fees and expenses to be requested as Counsel to the Debtors. |
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan |
| Other administrative expenses | None | Paid in full on the effective date of the Plan or according to separate written agreement. |
| Office of the U.S. Trustee Fees | Quarterly Fees $325-$650 per quarter | Paid in full on the effective date of the Plan |
| TOTAL | $15,000.00 | |

**C.    Classes of Claims**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*1. Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.

The following chart lists the Debtors' estimated § 507(a)(8) priority tax claims. All priority taxes will be paid within five years of the Petition Date.

| Class | Description | Impairment | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|---|---|
| 1. | California State Board of Equalization<br><br>Pre-petition sales taxes | Impaired | $1,041.00 | 11/15/08-6/12/09 | Quarterly Pmt = $80.76<br><br>Pmts Begin = 30 days after the effective date of the Plan<br><br>Pmts End = 40 months<br><br>Interest rate 2% |

*2. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as an unsecured claim.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 7 -

Debtors' Fourth Amended Disclosure Statement     Case No. 09-54650-ASW

Case: 09-54650    Doc# 72    Filed: 05/27/10    Entered: 05/27/10 16:21:57    Page 7 of 14

| Class | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secured claim of:* Name = America's Wholesale Lender<br><br>Collateral description = 418 California St., Salinas, CA<br><br>Allowed Secured Amount = $365,000.00<br><br>Priority of lien = First Deed of Trust | No | Impaired | Monthly Pmt = 2188.36<br>Pmts Begin = 30 days after the effective date of the Plan<br>Pmnts End = 360 months<br><br>Interest rate 6%<br><br>Treatment of Lien = Retained to the extent lien is secured |
| 3 | *Secured claim of:* Name = America's Wholesale Lender<br><br>Collateral description = 406 California St., Salinas, CA<br><br>Allowed Secured Amount = $250,000.00<br><br>Priority of lien = First Deed of Trust | No | Impaired | Monthly Pmt = 1,498.88<br>Pmts Begin = 30 days after the effective date of the Plan<br>Pmts End = 360 months<br><br>Interest rate 6%<br><br>Treatment of Lien = Retained to the extent lien is secured |

Case: 09-54650   Doc# 72   Filed: 05/27/10   Entered: 05/27/10 16:21:57   Page 8 of 14

### 3. Classes of Unsecured Claims

The following chart identifies the Plan's proposed treatment of Classes 4 through 6, which contain unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Undersecured Deficiency Claims of America's Wholesale Lender for 418 California St. and 406 California St., including the unsecured second deed of trust on 418 California St. | Impaired | Paid at same rate as General Unsecured Claims.<br><br>Undersecured deficiency claim on 418 California St.: $486,945.98<br><br>Undersecured deficiency claim on 406 California St: $395,668.61<br><br>Total: $882,614.59 |
| 5 | General Unsecured Claims | Impaired | Creditors holding Class 4 and 5 claims will receive quarterly payments over 60 months from the effective date of the Plan equal to a pro-rata portion of $38,000.00, a recovery of approximately 4% on their claims.<br><br>The amount of each payment to be distributed to holders of Class 4 and Class 5 claims is $1,900.00 per quarter.<br><br>The estimated total of Class 5 claims is $6,505.46 |
| 6 | Convenience Class Claims | Impaired | Each holder of a convenience class claim allowed under section 1122(b) of the Code will be paid in cash on the effective date of the Plan a one-time, lump sum, distribution equal to $.25 for each dollar of allowed claim. Convenience class claims are any claims in the amount of $1,500.00 or less.<br><br>The estimated total Class 6 claims is $3,718.20 |

### D. Means of Implementing the Plan

Payments and distributions under the Plan will be funded through rental payments, Debtors' wages, and funds from the operation of Debtors' other businesses.

- 9 -

Debtors' Fourth Amended Disclosure Statement    Case No. 09-54650-ASW

Case: 09-54650    Doc# 72    Filed: 05/27/10    Entered: 05/27/10 16:21:57    Page 9 of 14

### E. Risk Factors

The proposed Plan has the following risks:

- Loss of tenants
- Natural disasters
- Job loss or other losses in Debtors' income

### F. Executory Contracts and Unexpired Leases

Debtors will assume all executory contracts under the Plan. There are no executory contracts or unexpired leases known to Debtors at this time.

### G. Tax Consequences of Plan

*1.  To the Chapter 11 Debtor*

Gains which arise from forgiveness or reduction of debt are not included in income as Internal Revenue Code, Section 108, excludes forgiveness of indebtedness from income in Title 11 bankruptcy cases. Income resulting from discharge of indebtedness that is excluded from gross income, pursuant to the above paragraph, must either be applied to reduce the taxpayer's tax attributes or, at the taxpayer's election, to reduce the basis in depreciable property.

*2.  To the Creditors of Chapter 11 Bankruptcy*

By way of a general reference to the tax treatment of bad debts, business bad debts can be deducted to the extent of their worthlessness at any time when they become partly or totally worthless. Such bad debts can be deducted, generally, from gross income. A business bad debt is a debt created or acquired in connection with the trade or business of the taxpayer who is claiming the deduction.

**The above general information is not meant to be professional advice. If legal accounting or other expert assistance is required, the creditors should seek the services of a competent professional.**

### IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the

requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that <u>all classes</u> are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 10/20/09.***

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 2. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 3. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the

- 11 -

Debtors' Fourth Amended Disclosure Statement     Case No. 09-54650-ASW

Case: 09-54650   Doc# 72   Filed: 05/27/10   Entered: 05/27/10 16:21:57   Page 11 of 14

Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

4. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- Holders of claims and equity interests that have been disallowed by an order of the Court;
- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- Holders of claims or equity interests in unimpaired classes;
- Holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- Administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

5. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**C.   Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit D.

**D.   Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

- 12 -

Debtors' Fourth Amended Disclosure Statement     Case No. 09-54650-ASW

Case: 09-54650   Doc# 72   Filed: 05/27/10   Entered: 05/27/10 16:21:57   Page 12 of 14

*1.     Ability to Initially Fund Plan*

The Debtors believe that they will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Debtors' most recent monthly operating report showing the amount of cash on hand is attached to this disclosure statement as Exhibit E.

*2.     Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Based on the Debtors' financial performance during this Chapter 11 case together with the cash flow indicated on the Debtors' Monthly Operating Report, the Debtors believe that they will have sufficient cash flow to make all payments required under the Plan while avoiding future financial distress. The Debtors' anticipated income and expense projections for the future are attached as Exhibit F.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $<u>14,622.00</u>.

The final Plan payment is expected to be paid 60 months from the confirmation date.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     DISCHARGE OF DEBTOR

<u>Discharge.</u> Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Signature of the Plan Proponent: /s/ Noemi Valdez Pinedo

Signature of the Plan Proponent: /s/ Margarito Alonso Pinedo

Signature of the Attorney for the Plan Proponents: /s/ Sara J. Lipowitz

Date: May 27, 2010